NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ALYAS MUHAMMAD BADU-SHABAZZ,      :
                                  :   Civil Action No. 10-5637 (WJM)
               Plaintiff,         :
                                  :
                                  :
               v.                 :   **OPINION**
                                  :
KENNETH SHARP, et al.,            :
                                  :
               Defendants.        :

APPEARANCES:

     ALYAS MUHAMMAD BADU-SHABAZZ, Plaintiff pro se
     #12
     East Jersey State Prison, Special Treatment Unit
     CN 905, 8 Production Way
     Avenel, New Jersey 07001

**MARTINI**, District Judge

     Plaintiff, Alyas Muhammad Badu-Shabazz, an involuntarily committed person pursuant to the Sexually Violent Predator Act ("SVPA"), N.J.S.A. 30:4-27.24, et seq., seeks to bring this action in forma pauperis. Based on his affidavit of indigence, the Court will grant plaintiff's application to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

     At this time, the Court must review the Complaint, pursuant to 28 U.S.C. § 1915(e)(2), to determine whether the action should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks

monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that this action should be dismissed for failure to state a claim at this time.

## I.   BACKGROUND

Plaintiff, Alyas Muhammad Badu-Shabazz ("Badu-Shabazz"), brings this civil rights action, pursuant to 42 U.S.C. § 1983, against the following defendants: Kenneth Sharp, Assistant Attorney General for the State of New Jersey; Jennifer Velez, Commissioner of the New Jersey Department of Human Services ("NJDHS"); John Main, CEO of the NJDHS at the Ann Klein Forensic Center in Trenton, New Jersey; Steve Johnson, Assistant Superintendent at the East Jersey State Prison, Special Treatment Unit ("EJSP-STU"); Dr. Merril Main, Clinical Director at EJSP-STU; Shantay Brame Adams, Assistant Unit Director at the STU in Avenel, New Jersey; and Debbie Hasting, Superintendent at the Adult Diagnostic and Treatment Center ("ADTC") in Avenel, New Jersey.  (Complaint, Caption and ¶¶ 4b-4h).  The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of plaintiff's allegations.

In his Complaint, Badu-Shabazz alleges that defendants have either authorized or condoned the New Jersey Department of Corrections to place plaintiff, a civilly committed resident, on

prison grounds and under prison policy and guidelines in violation of his constitutional rights and his patients' bill of rights.  (Compl., ¶¶ 4b-4h).  In addition, Badu-Shabazz complains that defendants have ignored and/or overlooked how the correctional officers are treating the residents at EJSP-STU; that defendants Merril Main and John Main have allowed correctional officers at EJSP-STU full control to dictate how therapy groups and treatments are run.  (Compl., ¶¶ 4d and 4f).  Plaintiff also complains that defendant Adams has failed to come to EJSP-STU to see how the conditions of the cells are for the residents, and that defendant Hastings allows the correctional staff to treat the residents' visitors "like there [sic] not human."  (Compl., ¶¶ 4g, 4h).

Specifically, Badu-Shabazz alleges that, on May 6, 2010, defendant Johnson placed plaintiff on the South Unit after a test called the "HairScore Psychopathy Test" was conducted.  On May 12, 2010, defendants Johnson and Merril Main informed the residents that mail and packages would be received and sent at different facilities.  Plaintiff attaches to his Complaint a memo dated May 14, 2010, concerning first class mail and packages.  He also attaches to his Complaint another memo dated June 18, 2010, pertaining to receipt of food packages.  (Compl., ¶6).

On May 19, 2010, Badu-Shabazz reported to Johnson that the ceiling was leaking and rain would drip on the floor leaving a

white substance on the floor.  (Id.).  Also on May 19, 2010,
Badu-Shabazz observed the NJDHS staff psychiatrists,
psychologists and social workers moving their office supplies off
grounds to a location in Edison, New Jersey, leaving plaintiff
with no on-site psychiatrist after 4:00 p.m.  (Id.).

On October 14, 2010, Dr. Merril Main came to the South Unit
where plaintiff was confined and told plaintiff that he was on
South Unit because of plaintiff's past history.  On October 18,
2010, Badu-Shabazz called his attorney to inform him that Dr.
Merril Main had stopped plaintiff's therapist from being in the
meeting that day.  On October 21, 2010, at 9:45 a.m., plaintiff
had group but was told by Sgt. S. Smith that plaintiff had to go
to the commissary first.  While at the commissary, plaintiff's
cell unit was searched.

Badu-Shabazz does not indicate the relief he seeks in this
matter.

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

A district court is required to review a complaint in a
civil action where the litigant is proceeding in forma pauperis.
Specifically, the court is required to identify cognizable claims
and to sua sponte dismiss any claim that is frivolous, malicious,
fails to state a claim upon which relief may be granted, or seeks
monetary relief from a defendant who is immune from such relief,
pursuant to 28 U.S.C. § 1915(e)(2)(B).  Accordingly, because

4

Badu-Shabazz is proceeding in forma pauperis in this matter, this action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle

him to relief.'" <u>Haines</u>, 404 U.S. at 521 (quoting <u>Conley v.</u>
<u>Gibson</u>, 355 U.S. 41, 45-46 (1957)).  <u>See also</u> <u>Erickson</u>, 551 U.S.
at 93-94 (In a pro se prisoner civil rights complaint, the Court
reviewed whether the complaint complied with the pleading
requirements of Rule 8(a)(2)).

     However, recently, the Supreme Court revised this standard
for summary dismissal of a Complaint that fails to state a claim
in <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009).  The issue before
the Supreme Court was whether Iqbal's civil rights complaint
adequately alleged defendants' personal involvement in
discriminatory decisions regarding Iqbal's treatment during
detention at the Metropolitan Detention Center which, if true,
violated his constitutional rights.  <u>Id</u>.  The Court examined Rule
8(a)(2) of the Federal Rules of Civil Procedure which provides
that a complaint must contain "a short and plain statement of the
claim showing that the pleader is entitled to relief."
<u>Fed.R.Civ.P.</u> 8(a)(2).[1]  Citing its recent opinion in <u>Bell</u>
<u>Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), for the
proposition that "[a] pleading that offers 'labels and
conclusions' or 'a formulaic recitation of the elements of a
cause of action will not do,' "<u>Iqbal</u>, 129 S.Ct. at 1949 (quoting
<u>Twombly</u>, 550 U.S. at 555), the Supreme Court identified two

_____

     [1]  Rule 8(d)(1) provides that "[e]ach allegation must be
simple, concise, and direct.  No technical form is required."
<u>Fed.R.Civ.P.</u> 8(d).

working principles underlying the failure to state a claim

standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... . Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1948. The Supreme Court's ruling in

Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible.  Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210(3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin for the 'no set of facts' standard" set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] that applied to federal complaints before Twombly.  Fowler, 578 F.3d at 210.  The Third Circuit now requires that a district court must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50].  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.]  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  See Phillips, 515 F.3d at 234-35.  As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'"  Iqbal, [129 S.Ct. at 1949-50].  This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

---

[2]  In Conley, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Id., 355 U.S. at 45-46.  Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

Fowler, 578 F.3d at 210-211.

This Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of Plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89 (2007).  Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

### III.   SECTION 1983 ACTIONS

Badu-Shabazz brings this action pursuant to 42 U.S.C. § 1983.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

9

IV.  THE NEW JERSEY SEXUALLY VIOLENT PREDATOR ACT

The New Jersey SVPA, N.J.S.A. 30:4-27.24 *et seq.*, provides for the custody, care and treatment of involuntarily committed persons who are deemed to be sexually violent predators ("SVP"). N.J.S.A. 30:4-27.26.  The New Jersey Department of Corrections ("DOC") operates the facilities designated for SVPs, N.J.S.A. 30:4-27.34(a); and the New Jersey Department of Human Services ("DHS") provides for their treatment.  N.J.S.A. 30:4-27.34(b). The SVPA was amended in 2003 to require that regulations be promulgated jointly by the DOC and the DHS, in consultation with of the Attorney General, taking "into consideration the rights of the patients as set forth in section ten of P.L. 1965, c. 59 (C. 30:4-24.2) ... [to] specifically address the differing needs and specific characteristics of, and treatment protocols related to, sexually violent predators."  N.J.S.A. 30:4-27.34(d).

In passing the SVPA, the New Jersey Legislature made specific findings regarding SVPs.  N.J.S.A. 30:4-27.25.  The Legislature noted that it was necessary to modify the previous civil commitment framework and additionally separate SVPs from other persons who have been civilly committed.  Id.  The SVPA defines a SVP as:

> ... a person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with a sexually violent offense but found to be incompetent to stand trial, and suffers from a mental abnormality or personality disorder that makes the person likely to engage

in acts of sexual violence if not confined in a secure
facility for control, care and treatment.

N.J.S.A. 30:4-27.26(b).

Those persons committed under the SVPA shall receive annual
review hearings.  N.J.S.A. 30:4-27.35.  A SVP may be released
from involuntary civil commitment upon recommendation of the DHS
or by the SVP's own petition for discharge.  N.J.S.A. 30:4-27.36.

V.  ANALYSIS

A.  Transfer to Prison Facility Claim

Badu-Shabazz's main argument appears to claim that his
transfer to a prison facility, as a civilly committed person
under the SVPA, is unconstitutional because he is subject to the
prison policies in place for the orderly operation and security
of a prison facility.

In Kansas v. Hendricks, 521 U.S. 346 (1997), the Supreme
Court examined the conditions of confinement provided by Kansas'
Sexually Violent Predator Act.  The Act called for the
confinement of sexually violent predators in a secure facility
because they were dangerous to the community.  Id., 521 U.S. at
363-64.  Pertinent here, the Supreme Court was aware that the
sexually violent predators in Kansas were to be held in a
segregated unit within the prison system.  However, the Court
noted that the conditions within the unit were essentially the
same as conditions for other involuntarily committed persons in
mental hospitals.  Moreover, confinement under the Act was not

11

necessarily indefinite in duration, and the Act provided for treatment.  Id., 521 U.S. at 363, 364, 365-368.  Thus, the Supreme Court held that involuntary confinement under Kansas' SVPA was not unconstitutional so long as such civilly-confined persons are segregated from the general prison population and afforded the same status as others who have been civilly committed.  Id., 521 U.S. at 368-69.  See also Seling v. Young, 531 U.S. 250, 261062 (2001)(holding same with respect to the State of Washington's SVPA).

Here, the New Jersey SVPA is essentially the same as the Kansas and Washington SVP statutes that were examined and upheld as constitutional by the Supreme Court in Hendricks and Seling, respectively.[3]  See Bagarozy v. Goodwin, Civil Action No. 08-468 (SRC), 2008 WL 4416455, *7-8 (D.N.J. Sept. 23, 2008); In re Commitment of W.Z., 173 N.J. 109, 801 A.2d 205, 211 (2002). Therefore, this Court finds that Badu-Shabazz's placement and confinement in a Special Treatment Unit for SVP residents that is a segregated unit in the East Jersey State Prison, does not, in and of itself, violate the U.S. Constitution's Due Process Clause or the Eighth Amendment's prohibition against cruel and unusual

---

[3]  Recently, the Supreme Court held constitutional under the Necessary and Proper Clause, a federal statute that allowed a district court to order the civil commitment of a sexually dangerous federal prisoner beyond the date the prisoner would otherwise be released.  United States v. Comstock, No. 08-1224, __ U.S. __ , 130 S.Ct. 1949 (May 17, 2010).  Although these civilly committed persons remained confined at a federal prison, namely, FCI Butner, the Court did not address their place of civil confinement as being unconstitutional.

punishment.  Accordingly, Badu-Shabazz's claim that his continued confinement in a segregated unit within a prison facility is unconstitutional must be dismissed for failure to state a cognizable claim of a constitutional deprivation.

B.   Conditions of Confinement Claim

Although plaintiff's placement in a segregated unit within a prison facility is not, in and of itself, a constitutional violation, Badu-Shabazz makes additional allegations concerning the conditions of confinement at the EJSP facility.  For instance, he complains that he is housed in a prison facility subject to restrictions.  See Youngberg v. Romeo, 457 U.S. 307, 321-22 (1982)("Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.").

Generally, the Fourteenth Amendment requires that civilly committed persons not be subjected to conditions that amount to punishment, Bell v. Wolfish, 441 U.S. 520, 536 (1979),[4] within the bounds of professional discretion, Youngberg, 457 U.S. at 321-22.  Specifically, in Youngberg, the Supreme Court held that civilly committed persons do have constitutionally protected interests, but that these rights must be balanced against the

---

[4]  In Bell v. Wolfish, the Supreme Court held that whether a condition of confinement of pretrial detainees violated their constitutional rights turns on whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate government purpose.  441 U.S. 520, 535-39, (1979).

reasons put forth by the State for restricting their liberties. Id. at 307.  The Constitution is not concerned with de minimis restrictions on patients' liberties.  Id. at 320.  Moreover, "due process requires that the conditions and duration of confinement [for civilly confined persons] bear some reasonable relation to the purpose for which persons are committed."  Seling, 531 U.S. at 265.  While the nature of an SVP's confinement may factor in this balance of what is reasonable, it is clearly established that the substantive due process protections of the Fourteenth Amendment apply to SVPs. See Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir. 2001)(applying the Fourteenth Amendment's "objective reasonableness" standard to excessive force claims brought by civilly committed SVPs).

Badu-Shabazz's main allegation with respect to the conditions of his confinement relates to his contention that he is now housed in a prison facility and has been treated like a prisoner and subjected to prison rules.  For instance, Badu-Shabazz complains that he was subjected to a cell search, that movement to group sessions are controlled by the prison staff, mail is sent to a different location, and any resident who complains will be placed in MAP status.  Badu-Shabazz also alleges that the ceiling leaked when it rained all day on May 19, 2010.

The Third Circuit has held that placement of a civilly committed SVP in segregated confinement does not violate due

14

process unless the deprivation of liberty is in some way extreme. See Deavers v. Santiago, 243 Fed. Appx. 719, 721 (3d Cir. 2007)(applying Sandin v. Conner, 515 U.S. 472 (1995),[5] to segregated confinement of civilly committed SVPs).  See also Thielman v. Leean, 282 F.3d 478 (7th Cir. 2002)(likewise extending Sandin to civil commitment settings).  Thus, Badu-Shabazz's general allegation that disruptive and agitative residents may be placed in MAP status, and that general movement is monitored and restricted, without more, fails to articulate a cognizable claim of constitutional magnitude, in light of Deavers.  Badu-Shabazz fails to allege any facts to show that MAP restrictions and movements within the EJSP facility are unduly extreme and unrelated to the purposes for which such restrictions are imposed.

Additionally, for the following reasons, this Court finds that Badu-Shabazz's complaints about the mail restrictions, cell searches, and a leaking ceiling, are not extreme conditions of plaintiff's confinement as a civilly committed person, and thus, do not violate due process.

1.  *Unlawful Search Claim*

Badu-Shabazz alleges that he was subjected to a cell search on one occasion.  In particular, Badu-Shabazz alleges that his

---

[5]  In Sandin, the Supreme Court held that there was no cognizable liberty interest in freedom from additional restraint in a prison setting.  See 515 U.S. at 486 ("We hold that [the prisoner's] discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest.").

cell was searched before he went to group treatment and was told to wait in the commissary.  He asserts that as a civilly committed person, such searches are unconstitutional and violate his rights under the Fourth Amendment.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures."  U.S. CONST. amend. IV.  Reasonableness under the Fourth Amendment "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself."  Skinner v. Ry. Labor Executives' Ass'n, 489 U.S. 602, 618 (1988)(quoting United States v. Montoya de Hernandez, 473 U.S. 531, 537 (1985)).  "Thus, the permissibility of a particular practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests."  Id. at 619 (quotation marks and internal citation omitted).

In Hudson v. Palmer, 468 U.S. 517, 530 (1984), a prisoner argued that a cell search conducted to harass him was unreasonable because a prisoner has a reasonable expectation of privacy not to have his cell, locker, personal effects, person invaded for such a purpose.  Id. at 529.  The Supreme Court rejected the claim because "prisoners have no legitimate expectation of privacy."  Id. at 530.  The Court observed that:

> A right of privacy in traditional Fourth Amendment terms is
> fundamentally incompatible with the close and continual
> surveillance of inmates and their cells required to ensure

> institutional security and internal order.... [S]ociety
> would insist that the prisoner's expectation of privacy
> always yield to what must be considered the paramount
> interest in institutional security.... [I]t is accepted by
> our society that loss of freedom of choice and privacy are
> inherent incidents of confinement.

Id. at 527-28 (footnotes, citations and internal quotation marks

omitted).  The same conclusion was reached with respect to

pretrial detainees other than convicted prisoners.  See Bell v.

Wolfish, 441 U.S. 520, 558-560 (1979)(finding that a body cavity

searches of pretrial detainees do not violate the Fourth

Amendment).[6]

Consequently, involuntarily committed patients and SVPs,

like pretrial detainees, are entitled to some protection under

the Fourth Amendment, but they do not have an expectation of

privacy equal to an individual in society generally.  See Serna

v. Goodno, 567 F.3d 944, 948 (8th Cir. 2009)(noting that pretrial

detainees are kept in custody because there is cause to believe

they are dangerous; similarly, commitment under Minnesota law as

a sexually dangerous person requires a finding of dangerousness),

---

[6]  In Bell v. Wolfish, the United States Supreme Court, in
determining the constitutionality of post-visitation body cavity
searches, held that a reasonableness test should be employed when
examining the constitutionality of a search that encroaches upon
the personal privacy of an inmate and the integrity of the
inmate's body.  In other words, courts must balance the need for
the particular search against the invasion of personal rights
that the search entails.  Courts must consider the scope of the
particular intrusion, the manner in which it is conducted, the
justification for initiating it, and the place in which it is
conducted.  441 U.S. 520, 559 (1979); see also Turner v. Safley,
482 U.S. 78 (1987) (a prison regulation which infringes upon an
inmate's constitutionally recognized right is valid only if it is
reasonably related to a legitimate penological interest).

cert. denied, 130 S.Ct. 465 (2009); Allison v. Snyder, 332 F.3d 1076-79 (7th Cir. 2003)(SVPs may be subjected to conditions that advance goals such as preventing escape and assuring the safety of others, even though they may not technically be "punished"), cert. denied, 540 U.S. 985 (2003); Aiken v. Nixon, 236 F. Supp.2d 211, 233 (N.D.N.Y. 2002), aff'd 80 Fed. Appx. 146 (2d Cir. 2003); see also, Jennings v. New York State Office of Mental Health, 786 F. Supp. 376, 382, 384 (S.D.N.Y. 1992), aff'd, 977 F.2d 731 (2d Cir. 1992).

Similarly, the United States Court of Appeals for the Ninth Circuit has held that, because SVPs have been civilly committed subsequent to criminal convictions and have been adjudged to pose a danger to the health and safety of others, they are subject to "[l]egitimate, non-punitive government interests" such as "maintaining jail security, and effective management of [the] detention facility." Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004). Thus, the reasonableness of a particular search or seizure is determined by reference to the detention context and is a fact-intensive inquiry.  Id.

Here, with respect to his Fourth Amendment claim, Badu-Shabazz's primary argument appears to be that any prison actions that did not specifically take into account his classification as a SVP is per se a constitutional violation.  Applying the balancing test employed by Wolfish, this Court finds that general cell searches are plainly reasonable and do not violate

plaintiff's Fourth Amendment rights.  See Semler v. Ludeman, 2010 WL 145275, *19, D. Minn. Jan. 8, 2010)(finding no Fourth Amendment violation where plaintiffs were required to submit to pat searches following gym use and kitchen work assignments that included removal of socks and shoes, opening their mouths, showing their zippers, showing behind their ears and running their fingers through their hair; search was "not highly intrusive" and was "not unlike the scope of searches of the general public at airport security checkpoints).  See also Serna v. Goodno, 567 F.3d 944, 955-56 (upholding reasonableness of a facility-wide visual body cavity search after a cell phone case (cell phones considered contraband) was found, because, while invasive, the searches were conducted privately, safely, and professionally, and the facility was reacting to a recurring problem involving contraband cell phones), cert. denied, 130 S. Ct. 465 (Oct. 20, 2009).

There are no allegations in the Complaint that the guards conducted the cell search in a menacing or harassing manner. Furthermore, there is no allegation or evidence to show that the cell search was conducted solely for punitive purposes.  Rather, Badu-Shabazz merely complains that his cell was searched.  Thus, it appears that his only claim is that his cell should not be searched because he is a civilly committed resident and not a prisoner.  Based on the cases cited herein, plaintiff's cell search claim cannot be sustained.  Plaintiff's status as a

civilly committed person subjects him to conditions of
confinement necessary to ensure the safety of others.  Therefore,
this Court will dismiss Badu-Shabazz's Fourth Amendment unlawful
search claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for
failure to state a cognizable claim under § 1983.

    2.  *Interference With Mail*

    Next, Badu-Shabazz seems to complain that his mail must be
sent to Avenel rather than directly to the EJSP unit where he is
confined.  The Court perceives this claim as asserting a
violation of plaintiff's First Amendment rights.  However, Badu-
Shabazz does not indicate that he has not received mail or
packages, or that his mail has been opened outside his presence.

    As a general rule, inmates have a limited liberty interest
in their mail under the First and Fourteenth Amendments.  <u>Jones
v. Brown</u>, 461 F.3d 353, 358 (3d Cir. 2006), <u>cert</u>. <u>denied</u>, 549
U.S. 1286 (2007).[7]  However, an inmate's constitutional right to

---

    [7]  In <u>Jones v. Brown</u>, the United States Court of Appeals for
the Third Circuit held that the legal mail policy of state prison
in opening legal mail outside the presence of the inmate violated
the inmate's First Amendment right to freedom of speech, and was
not reasonably related to prison's legitimate penological
interest in protecting health and safety of prisoners and staff.
461 F.3d at 358.  The Third Circuit also has held that "a pattern
and practice of opening properly marked incoming court mail
outside an inmate's presence infringes communication protected by
the right to free speech.  Such a practice chills protected
expression and may inhibit the inmate's ability to speak,
protest, and complain openly, directly, and without reservation
with the court." <u>Bieregu v. Reno</u>, 59 F.3d 1445, 1452 (3d Cir.
1995) (applying the <u>Turner</u> analysis), <u>implied overruling on other
grounds recognized in</u> <u>Oliver v. Fauver</u>, 118 F.3d 175, 177-78 (3d
Cir. 1997).  Thus, the assertion that legal mail is intentionally
opened and read, delayed for an inordinate period of time, or

send and receive mail may be restricted for legitimate penological interests.  See Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Turner v. Safley, 482 U.S. 78, 89 (1987).  In Turner, the Supreme Court of the United States found that a prison regulation infringing on an inmate's constitutional rights is valid so long as it is reasonably related to a legitimate penological interest.  Id. at 89.  The Court established a balancing test pursuant to which courts analyze prohibitions on prisoners' exercise of their constitutional rights by considering the following four factors: (1) whether prohibiting an inmate from exercising a constitutional right is rationally related to a legitimate governmental interest; (2) whether there are alternative means of exercising that right; (3) what effect accommodation of the interest would have on guards, other inmates, and the allocation of prison resources; and (4) whether there are ready alternatives available that continue to serve the prison's interest without impinging constitutional rights. Turner, 482 U.S. at 89-91.  The Court also recognized that deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security.  Id.

The United States Court of Appeals for the Third Circuit has applied Turner in analyzing constitutional claims by civilly

---

stolen may state a First Amendment claim.  See, e.g., Antonelli v. Sheahan, 81 F.3d 1422, 1431-32 (7th Cir. 1996); Castillo v. Cook County Mail Room Dep't, 990 F.2d 304 (7th Cir. 1993).

committed SVPs.  <u>See</u> <u>Rivera v. Rogers</u>, 224 Fed. Appx. 148, 2007
WL 934413 (3d Cir. March 29, 2007)(applying <u>Turner</u> in analyzing
claims of SVPs that opening of their packages violated their
First Amendment rights).  Other courts likewise have applied
<u>Turner</u> when analyzing claims brought by civilly committed SVPs
alleging First Amendment violations.[8]  <u>See</u> <u>Willis v. Smith</u>, 2005
WL 550528 (N.D. Iowa Feb. 28, 2005)(noting that status of SVPs
was substantially similar to that of prisoners and applying
<u>Turner</u> to SVP claims concerning mail handling procedures); <u>Ivey
v. Mooney</u>, 2008 WL 4527792, at *4 n. 7 (D. Minn. Sept. 30,
2008)(applying <u>Turner</u>, but noting that a civil confinement is
significantly different from a criminal confinement); <u>Francis v.
Watson</u>, 2006 WL 2716452, at *3 (D.S.C. Sept. 22, 2006)(citing
cases that have applied <u>Turner</u> in cases involving civilly
confined persons); <u>Marsh v. Liberty Behavioral Health Care, Inc.</u>,
2008 WL 821623, at *5 (M.D. Fla. Mar. 27, 2008), <u>aff'd</u> 330 Fed.
Appx. 179 (11th Cir. 2009); <u>Beaulieu v. Ludeman</u>, 2008 WL 2498241,
at *20 (D. Minn. June 18, 2008).

In <u>Rivera</u>, the Third Circuit affirmed the district court's
ruling that a facility housing civilly committed SVPs has a

---

[8]  Essentially, the First Amendment analysis under <u>Turner</u>
mirrors the due process analysis under <u>Youngberg</u>; in both
instances, courts must balance the constitutional interests of
confined persons against the legitimate interests of the state-
run institution in which they reside.  <u>See</u> <u>Beaulieu v. Ludeman</u>,
2008 WL 2498241, at *20 n. 15 (finding <u>Turner</u> to be consistent
with <u>Youngberg</u> because "it will not allow a Program detainee's
right to be restricted unless there is a valid institutional
reason for doing so").

legitimate interest in both the safety of its facility and the rehabilitation of its patients.  Rivera, 224 Fed. Appx. at 151 (citing Waterman v. Farmer, 183 F.3d 208, 215 (3d Cir. 1999)("[I]t is beyond dispute that New Jersey has a legitimate penological interest in rehabilitating its most dangerous and compulsive sex offenders.")).  Specifically, the court upheld as constitutional the STU's policy that allows staff to open packages not marked as "legal mail" to assure that the packages do not contain contraband (i.e., items either harmful to staff and residents, or detrimental to rehabilitation).  The court found that plaintiff was free to send and receive mail so long as the content of his mail was not sexually explicit.  Moreover, the Third Circuit found no error in the district court's conclusion that there were no ready alternatives to mail security and that the STU's policy appeared to be the only viable alternative, thus supporting the reasonableness of the mail policy.  Rivera, 224 Fed. Appx. at 151.

Here, this Court likewise finds that it is beyond dispute that the staff at EJSP, where plaintiff and other SVP residents are newly housed, has a legitimate interest in both the safety of its facility and rehabilitating its patients.  As noted above, these civilly committed persons are convicted sexual predators, which makes safety at EJSP a very important concern.  The staff clearly must determine if any items coming through the mail pose a threat to the safety of the staff or the other residents.  They

23

also must decide if any of the materials passing through the mail could be detrimental to a resident's therapy.  Consequently, as set forth by the Supreme Court and the Third Circuit, the Court must defer to the prison officials when it comes to issues of managing a safe and operational prison facility.  In this case, delivery of letters and packages at the Avenel facility located close by, where the staff is trained with respect to SVP issues unlike the general NJDOC staff at EJSP, assures that harmful materials are not being passed through the mail, but also allows for specialized treatment regarding SVP residents.  This new policy, which appears to be preliminarily instituted because of the recent transfer of the SVP residents to EJSP, clearly bears a rational relationship to both interests discussed above.

Moreover, in his interference with the mail claim, Badu-Shabazz alleges no actual incident of interference with his mail.  Courts have held that a single interference with the delivery of an inmate's personal mail, without more, does not rise to the level of a constitutional deprivation.  Morgan v. Montayne, 516 F.2d 1367 (2d Cir. 1975), cert. denied, 424 U.S. 973 (1976).  Thus, the only continuing complaint seems to be that his mail is sent to another facility instead of EJSP where he now resides.  Badu-Shabazz does not articulate a claim that prison officials are intentionally delaying or opening his mail.  Accordingly, this claim will be dismissed for failure to state a cognizable federal constitutional deprivation.

24

3.   *Leaking Ceiling Claim*

Finally, Badu-Shabazz alleges that his unit had a leaking ceiling on May 19, 2010, after it had rained.  He does not contend that this single condition was intended as punishment, or that he has suffered adversely from the alleged condition.  Based on this general allegation, even if true, the Court finds no atypical or significant deprivation that would rise to the level of a constitutional violation at this time.

Therefore, with respect to his conditions claims as alleged, this Court finds that Badu-Shabazz has failed to state a cognizable claim in this regard at this time, and the alleged conditions of confinement claims will be dismissed accordingly. To the extent that Badu-Shabazz can allege additional facts to show that unconstitutional conditions of confinement exist, he may seek leave to re-open this case and file an amended pleading.[9]

---

[9]   Should plaintiff so choose to amend his Complaint to cure the deficiencies noted herein, pursuant to Federal Rule of Civil Procedure 15, plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.

C.   Denial of Treatment Claim

Badu-Shabazz also appears to assert that his therapy/treatment sessions have been disrupted or denied because of the prison setting and control by NJDOC officials over movements and conduct of the residents in the EJSP-STU.  In particular, Badu-Shabazz alleges that there are no on-site staff psychiatrists after a certain time, that his therapist was not allowed in a meeting and that he had been placed on the South Unit at the EJSP-STU.  This claim is construed as a claim by Badu-Shabazz that defendants have acted in violation of the Fourteenth Amendment.

The Fourteenth Amendment to the United States Constitution, § 1, guarantees that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law."  This due process guarantee has been interpreted to have both procedural and substantive components, the latter which protects fundamental rights that are so "implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed."  Palko v. Conn., 302 U.S. 319, 325 (1937).  These fundamental rights include those guaranteed by the Bill of Rights, as well as certain liberty and privacy interests implicitly protected by the Due Process Clause, such as the right to marry.  Washington v. Glucksberg, 521 U.S. 702, 720 (1997).  Substantive due process also protects against government conduct that is so egregious that it "shocks the conscience," even where

26

the conduct does not implicate any specific fundamental right. See United States v. Salerno, 481 U.S. 739, 746 (1987).

Laws disturbing fundamental rights receive strict scrutiny and will be upheld if they are "narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). However, regulations not implicating fundamental rights (in other words, those claims attacking particularly egregious or arbitrary governmental actions) are analyzed under the deferential standard referred to as the rational basis review, and will generally succeed only if the government action shocks the conscience. See Glucksberg, 521 U.S. at 728.

With respect to Badu-Shabazz's claim, it appears that he is asserting that he has a fundamental right to adequate treatment as a civilly committed sex offender, and that as a result of the prison setting he is not being afforded adequate treatment. The Supreme Court established that there exists a constitutionally protected right of mentally retarded persons confined at a state institution to minimally adequate treatment. Specifically, the Supreme Court held that there is a constitutional right of mentally disabled persons confined at a state institution to "minimally adequate habilitation", self-care treatment or training to the extent necessary to protect their recognized fundamental rights to safety and freedom from physical restraints. Youngberg, 457 U.S. at 316, 319 and 322.

The Supreme Court further held that, where a fundamental right is at issue, a district court must balance "the liberty of the individual and the demands of an organized society" to determine whether such right has been violated. Youngberg, 457 U.S. at 320. Although restrictions burdening a fundamental right generally receive strict scrutiny, in Youngberg, the Supreme Court found that this sort of rigorous analysis would unduly burden the ability of states, specifically their professional employees, to administer mental health institutions. Id. at 322. Consequently, the Court concluded that "the Constitution only requires that the courts make certain that professional judgment was in fact exercised," because "[i]t is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." Id. at 321 (internal quotation and citation omitted). Thus, a decision, "if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such judgment." Id. at 323.

In Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002), the United States Court of Appeals for the Third Circuit held that New Jersey's unique former statutory scheme for sex offenders that predicated the term of sentence on a prisoner's response to treatment and created a right to treatment created a fundamental

and cognizable liberty interest in treatment, for purposes of
both procedural and substantive due process analyses.  288 F.3d
at 545.  Leamer was not a civilly committed sex offender like
plaintiff here.  Rather, Leamer was a convicted sex offender
whose confinement and treatment were inextricably linked pursuant
to statute.  The sentencing court had classified Leamer as having
a "mental aberration" and in need of "specialized treatment,"
which automatically subjected Leamer to the maximum incarceration
permitted by law unless he is cured prior to that point.  Leamer
could not reduce his sentence through good behavior credits,
parole policies or other credits.  Instead, he could only shorten
his incarceration through successful therapy, which was an
"inherent and integral element" of the statutory scheme.
Consequently, the Third Circuit found that deprivation of
treatment would be a grievous loss not emanating from the
sentence.  Leamer, 288 F.3d at 544.

     Apart from that recognized in Youngberg to prevent the
violation of recognized fundamental rights to safety and freedom
from physical restraints, this Court finds the Third Circuit's
holding in Leamer to clearly extend to an involuntarily committed
sex offender under New Jersey's SVPA.  Like Leamer, the length of
Badu-Shabazz's confinement under the SVPA is predicated on his
response to treatment.  Indeed, the provisions of the SVPA
explicitly recognize New Jersey's obligation to provide treatment
to SVPs for their eventual release based on successful therapy.

See N.J.S.A. 30:4-27.32(a)("If the court finds by clear and
convincing evidence that the person needs continued involuntary
commitment as a sexually violent predator, it shall issue an
order authorizing the involuntary commitment of the person to a
facility designated for the custody, care and ***treatment*** of
sexually violent predators")(emphasis added); N.J.S.A. 30:4-
34(b)("The Division of Mental Health Services in the Department
of Human Services shall provide or arrange for treatment for a
person committed pursuant to this act.  Such treatment shall be
appropriately tailored to address the specific needs of sexually
violent predators."); N.J.S.A. 30:4-27.36(a)(At any time during
the involuntary commitment of a person under this act, if the
person's treatment team determines that the person's mental
condition has so changed that the person is not likely to engage
in acts of sexual violence if released, the treatment team shall
recommend that the Department of Human Services authorize the
person to petition the court for discharge from involuntary
commitment status"); see also Kansas v. Hendricks, 521 U.S. 346,
367 (1997)(concluding from similarly-worded provisions of Kansas
SVP Act that "the State has a statutory obligation to provide
'care and treatment for [persons adjudged sexually dangerous]
designed to effect recovery ....")(alterations in
original)(internal citations omitted).

Therefore, based on Youngberg and Leamer, this Court
concludes that Badu-Shabazz may have a fundamental liberty

interest in treatment, but has not stated a cognizable claim at
this time for purposes of both procedural and substantive due
process analyses.  See Bailey v. Gardebring, 940 F.2d 1150, 1154
(8th Cir. 1991), cert. denied, 503 U.S. 952 (1992)(where the
Eighth Circuit noted that Youngberg did not establish a right for
the civilly committed to treatment per se; the Supreme Court only
"held that the Constitution required only such 'minimally
adequate training ... as may be reasonable in light of [the]
liberty interest[ ] in safety and freedom from unreasonable
restraints.'")(quoting Youngberg, 457 U.S. at 322).  In Bailey,
the Eighth Circuit concluded that plaintiff had no right to
"psychiatric treatment to overcome a 'sexual offender condition'"
because he "was neither in danger during his civil commitment nor
was he subject to any restraints beyond the ordinary incidents of
any involuntary confinement."  Id. at 1153, 1154.  Citing Bailey,
district courts in the Eighth Circuit have since concluded that
civilly committed sexual predators have no substantive due
process right to mental health treatment, adequate or otherwise.
See Semler v. Ludeman, 2010 WL 145275, at *26 (D. Minn. Jan. 8,
2010)("Because this Court has not recognized a constitutional
right to effective 'treatment' in the context of civilly
committed sex offenders, Plaintiffs [alleging substantive due
process violations through ineffective treatment] have failed to
allege a due process claim ....")(citing Nicolaison v. Ludeman,
2008 WL 508549, at *8 (D. Minn. Feb. 11, 2008)(finding, in

31

ultimately concluding that involuntarily committed sex offender's right to treatment is not "clearly established" for purposes of 28 U.S.C. § 2254(d)(1), that <u>Youngberg</u> "only recognized a right to 'minimally adequate' treatment that reduces the need for restraints," and not a "comparable right to treatment that facilitates release")).

Indeed, based on the allegations and admissions by plaintiff in his Complaint, Badu-Shabazz fails to show any procedural or substantive due process violations at this time. He does not demonstrate a categorical denial of therapy and treatment sessions due to the prison setting in which he receives his treatment. Rather, his complaints more aptly demonstrate his personal dissatisfaction with a treatment plan and group therapy that takes place in a prison facility. Badu-Shabazz simply complains that correctional staff run movements for group therapy. There is no evidence that treatment is denied or is inadequate.

In <u>Leamer</u>, the Third Circuit, relying on <u>Sandin</u>, found that Leamer would face "significant obstacles" in establishing a procedural due process claim based on his placement on RAP (restricted activities program) status because the mere fact of placement in administrative segregation is not in and of itself enough to implicate a liberty interest. <u>Leamer</u>, 288 F.3d at 546. Similarly, in the instant case, although Badu-Shabazz complains that he and other disruptive and agitative residents might be

32

placed in MAP status in response to their behavior, there is no indication from the allegations here that these residents have been or will be denied treatment.

Indeed, there are no factual allegations of an absolute denial of treatment.  Badu-Shabazz merely alleges that prison staff regulate movement and conduct searches and other policy measures for the orderly running and security of the EJSP facility as a whole.  He does not allege that he has been denied treatment altogether.  Further, Badu-Shabazz recites legal conclusions in his complaint about being made to feel like a "prisoner" rather than a civilly committed person rather than allege any facts to support a claim that he has been denied treatment.  Indeed, he seems mostly fixated on the idea of being in a "prison setting" and does not allege any real disruption or interference with his treatment, other than controlled movements in the EJSP facility, which on its own, does not curtail group therapy.

This Court likewise finds no substantive due process violation at this time.  Substantive due process prevents the government from engaging in conduct that "shocks the conscience," or interferes with rights "implicit in the concept of ordered liberty."  Glucksberg, 521 U.S. at 721.  Under this standard, Defendants' actions in denying Badu-Shabazz his statutory right to treatment will be found unconstitutional under the Fourteenth Amendment if they were so arbitrary or egregious as to shock the

conscience.  See Leamer, 288 F.3d at 546-47 (substantive due process claim alleging inadequate treatment for committed sex offender "must focus on the challenged abuse of power by officials in denying [the plaintiff] the treatment regimen that was statutorily mandated and was necessary in order for his condition to improve, and thus for him to advance toward release").

Here, as demonstrated above, defendants have not categorically declined to provide any mental health treatment to Badu-Shabazz.  Thus, this Court cannot readily conclude that Defendants' actions were conscience-shocking and in violation of Badu-Shabazz's substantive due process rights.  Indeed, plaintiff's allegations, as set forth above, are merely conclusory and factually unsubstantiated.  Badu-Shabazz has not shown any disruption of treatment.  Instead, he simply objects to the manner and place in which treatment and sessions are provided.

Thus, the Court concludes that treatment has not been denied to Badu-Shabazz, as alleged because there is no demonstrated interruption of adequate treatment that would rise to the level of a constitutional due process deprivation as alleged.  Further, this Court concludes that the allegations asserted in Badu-Shabazz's Complaints do not show such egregious conduct or disruption as to render mental treatment at EJSP conscience-shockingly deficient.

Accordingly, based on the facts as alleged in the Complaint, Badu-Shabazz's claim alleging inadequate treatment will be dismissed for failure to state a cognizable claim of a deprivation of a constitutional right.

## V.   CONCLUSION

For the reasons set forth above, plaintiff's Complaint will be dismissed without prejudice, in its entirety as against all named defendants, for failure to state a claim at this time, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Plaintiff may seek leave to re-open this case to file an amended pleading to the extent he can allege facts to cure the deficiencies noted herein. An appropriate order follows.

s/William J. Martini

WILLIAM J. MARTINI
United States District Judge